**LESLIE MILLINER, Appellee**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellant**

No. 78-2149

United States Court of Appeals

Third Circuit

Argued December 15, 1978

Filed March 2, 1979

LENA A. WILSON, ESQ., Assistant Attorney General (Department of Law), Charlotte Amalie, St. Thomas, V.I., *for appellant*

DESMOND L. MAYNARD, ESQ., St. Thomas, V.I., *for appellee*

Before SEITZ, *Chief Judge*, WEIS and GARTH, *Circuit Judges*

OPINION OF THE COURT

SEITZ, *Chief Judge*

Plaintiff, Leslie Milliner, brought this action against the Government of the Virgin Islands, claiming that the Government paved an existing dirt road on his property without his consent, and that the road was being used as a public thoroughfare despite his repeated attempts to close it. Milliner characterized the Government's action as a taking of private property for public use without just compensation, in violation of section 3 of the Revised Organic Act of the Virgin Islands. He sought relief either in the nature of an injunction requiring the Government to close the road and restore the property to its former condition or an award of just compensation for the property taken, including damages for the diminution in value of his remaining property adjacent to the road.

The case was tried before the District Court of the Virgin Islands and judgment was entered for the plaintiff in the sum of $42,676.50, together with interest, attorney's fees and costs. The Government appeals from that judgment.

I.

Leslie Milliner is the fee owner of Parcel No. 56, Smith Bay, St. Thomas. His uncontradicted testimony at trial revealed that sometime in the fall of 1972 he became aware that the Government had paved a private dirt road he had

118

cut along the edge of his undeveloped property. That road now connects two public thoroughfares. Eventually, the Public Works Department admitted to Milliner that they had paved the road by mistake and advised him to fence it off at its intersections with the public highways. Milliner informed the Department that he had planned to build a home on the property and wanted to be certain that there were no restrictions on the proximity of his home to the road. The Department advised him that there were no restrictions because the road belonged to him and that he could build as close to it as he wished. Milliner's construction plans were later submitted to the Department and were approved, and the house was built.

Subsequently, Milliner attempted to close off the paved road at its intersections with the public thoroughfares. His neighbors protested, however, destroying his barriers and threatening him with physical violence, evidently acting on the assumption that a road paved by the Government was a public highway. Beginning in August, 1975, and for fourteen months thereafter, Milliner attempted to have the Government close the road and, if need be, restore it to its former condition. When these attempts failed he filed this lawsuit.

At the non-jury trial Milliner testified that he had observed incidents of drag racing on the road and that this caused him to fear for the safety of his children. He also complained that garbage had been dumped on his property by people using the road. After both sides had rested, the district judge entered his oral findings and conclusions into the record. He found that the Government had taken Milliner's property without just compensation, that, given the circumstances, Milliner had not acted unreasonably in bringing this action some four years after the paving of the road, that Milliner should be compensated for the fair market value of the land taken, that the Government's

action in paving the road raised certain hazards to Milliner's enjoyment of his adjacent property from which he was entitled to be protected and that he should be awarded the cost of constructing a fence between the road and his remaining property. The court rejected Milliner's claim for additional consequential damages to the remaining portion of his land. Judgment was entered for Milliner in the amount of $42,676.50; $10,862.50 for the land taken and $31,814.00 for the cost of fencing.

## II.

■ The Government does not contend on appeal that the paving of Milliner's private road did not constitute a taking. Nor does it contend that it was erroneous for the district court to conclude that, although the taking took place in 1972, before Milliner's house was built, he was entitled to be compensated for damages to his remaining land that did not arise until after the house was completed. We note that the district court's conclusion in this regard was understandable given the Government's assurances to Milliner when he built his house that the road could be maintained by him for his private use.

## A.

■ We find no merit in the Government's contention that this case must be remanded because of the district court's failure to make separate findings of fact and conclusions of law in accord with Rule 52(a) of the Federal Rules of Civil Procedure. The oral findings and conclusions entered by the district court at the conclusion of the trial are sufficient to indicate the basis of the trial judge's decision and provide an adequate basis for appellate review. See Lee v. Lee, 13 V.I. 351, 537 F.2d 762, 764 & n.3 (3d Cir. 1976).

## B.

The Government contends that the district court erred, as a matter of law, in awarding Milliner substantial damages for the taking of a private road for public use. The Government's argument is that a landowner is entitled to only nominal damages for the condemnation of land already burdened with an easement in the nature of a public right of way. Alternatively, the Government argues that the compensation awarded the owner of land burdened with such an easement should reflect the diminished fair market value of land so burdened.

 The record in this case does not provide the factual predicate to the Government's contention. Milliner testified that he had cut a private road along the edge of his property; there was no evidence that any other party had acquired a right to use that private road. In cross-examining plaintiff's expert as to the basis of his determination of the fair market value of the land taken, counsel for the Government attempted to elicit the expert's opinion as to the market value of the land, assuming it was burdened with an easement in the nature of a public right of way. The district court ruled that the question lacked relevance absent some evidence that the public had acquired a right of way over Milliner's private road. The Government was unable to produce any such evidence. Thus, we agree with the district court's conclusion that Milliner was entitled to be compensated for the strip of land paved by the Government in accordance with its full fair market value.

## C.

The district court ruled that the fair market value of the land taken was to be determined as of the fall of 1972 when Milliner first received notice that his road had been paved. See 28 V.I.C. § 419(6). The court adopted the testi-

mony of plaintiff's expert, a licensed real estate broker and appraiser with sixteen years experience in the Virgin Islands, as to the fair market value of that portion of Milliner's land paved by the Government. The expert testified that real estate values in Smith Bay had remained fairly constant since 1971, and that sales of land situated near Milliner's property, and with similar characteristics, between December, 1971 and December, 1972, established that $.79 per square foot was the fair market value of the land taken. The strip of land mistakenly paved by the Government constituted an area of 13,750 square feet; thus, the district court awarded Milliner $10,862.50 on that aspect of his claim for just compensation.

 The Government claims that $.79 per square foot is not the arithmetic mean of the sale prices relied upon by plaintiff's expert in reaching his opinion as to fair market value. The district court found, however, that $.79 was not too high a price given that a property immediately abutting Milliner's had been sold in 1971 for $.65 per square foot, and that two nearby properties comparable to Milliner's had been sold in 1972 for $.85 per square foot and $1.00 per square foot. Given these findings, we cannot hold that the district court's acceptance of the expert's opinion as to the fair market value of the land taken was clearly erroneous.

### D.

The Government contends that the district court erred in awarding Milliner the cost of fencing his remaining property along the road's edge as a separate item of damages. The Government argues that the majority rule that has been adopted in cases of partial takings is that "allowance is not to be made for the cost of the fencing, as such, but evidence of such cost is to be considered in ascertaining the diminution in value of the remainder area." 4A

Nichols on Eminent Domain § 14.24321, at 205–07 (3d rev. ed. 1976) (footnotes omitted).

Under Virgin Islands statutory law the amount of just compensation to be awarded one whose land is condemned for public use is to be determined by the court or a court-appointed commission. 28 V.I.C. § 418. In the case of a partial taking, an award of just compensation is to consist of the value of the portion of the property condemned plus an assessment of the damages, offset by any benefits, which will accrue to the portion not condemned by reason of the severance. 28 V.I.C. § 419(1)–(3). Moreover, the statute requires that "[a]s far as practicable compensation shall be assessed for each source of damage separately." 28 V.I.C. § 419(5). That statutory provision, not the common law rule cited by the Government, governs the manner in which damages are to be assessed in a Virgin Islands condemnation proceeding involving a partial taking.

■ In this case the district court determined that the value of that portion of Milliner's land paved by the Government was $10,862.50. The court also found, and the Government does not challenge this finding, that the value of Milliner's adjacent property was impaired by the public's use of the roadway, and that the resulting hazards and invasions of privacy testified to by Milliner could be minimized by the construction of a fence between his house and the road. Plaintiff's real estate appraisal expert, who also had expertise in area construction costs, testified as to the cost of building a suitable fence. Given the requirement in 28 V.I.C. § 419(5) that each source of damage should be assessed separately, to the extent practicable, we find no error in the district court's incorporation of the cost of fencing as a separate element of the damages awarded to Milliner.

The Government also contends that a separate award for fencing costs is inappropriate under Virgin Islands law

because of the specific provision for the award of such costs in cases in which the condemned land is to be utilized as a railroad. 28 V.I.C. § 419(4) provides:

> If the property sought to be condemned is for a railroad, the cost of good and sufficient fences along the line of such railroad, and the cost of cattle guards where fences may cross the line of such railroad shall be assessed.

■ We do not read this provision as precluding the award of fencing costs where land is taken for use as a public highway. The district court found that damage has accrued to Milliner's remaining property by reason of the Government's paving of his private road and that that damage can be ameliorated by the construction of a suitable fence. Traditionally courts have treated fencing costs similarly in cases involving the partial taking of private property for either railroads or highways, see 4A Nichols on Eminent Domain, supra at 203 & n.7 (collecting cases), and the specific statutory provision for the assessment of such costs in railroad cases should not be held to preclude their assessment, when appropriate, in other cases. Thus, we agree with the district court's determination that fencing costs could be considered in determining the damages that accrued to Milliner's remaining land as a result of the partial taking, and hold that it was not error for the court to incorporate those costs as a separate element of the damages awarded to Milliner.

### E.

The Government contends that the district court erred in according conclusive weight to the testimony of plaintiff's expert with respect to the cost of constructing a fence suitable for the purpose of protecting Milliner's property. This challenge is based on computational errors and inconsistencies that are evidenced in the expert's trial testimony. We agree with the contention that the district court erred

in adopting the expert's opinion as to the cost of suitable fencing, although for a different reason than that suggested by the Government.

When Milliner built his home, following the Department of Public Works' assurances that he would be able to maintain the paved road as a private thoroughfare, he enclosed his property on three sides with a fence constructed of concrete blocks topped by wooden rails. The district court found that the use of the road by the public caused hazards to plaintiff's enjoyment of his remaining property and interference with his privacy that could be minimized by the erection of a fence. Plaintiff's expert testified that, in order to maintain the character and value of Milliner's home and landscaping, the same type of fence already enclosing three sides of Milliner's property should be continued along the roadway. The court agreed that the fence to be constructed should be of the same type as that which Milliner had already erected on his property. The court's award of fencing costs in the amount of $31,814.00 adopted the expert's opinion as to the cost of constructing such a fence.

The expert's testimony with respect to the cost of building "a continuation of the type of fencing that is already in existence around the house" was as follows:

Q: How much would it be to construct the type of fence I referred to?

* * *

A: In my appraisal of March 1977, I have calculated out the cost of the building, or continuing the same quality and type of fencing that Mr. Milliner already established around his house, and the value of that type of construction, if completed, in a substantial workmanlike manner, would add up to $31,814.00.

Q: Sir, will you give us a breakdown of that cost estimate?

A: I calculated a foundation of concrete blocks two feet wide, 9 inches deep, on top of which would be a wall 608 feet long by five feet high with blocks 16 inches by 8 inches. It would be in addi-

tion, a native stone on the road side wall face. On top of this, a wrought iron deck railing six inches high on top of the wall. The foundation would take 55 yards of concrete at $55.00 a yard, plus steel, at $15.00 a yard, and labor, at $60.00 a yard, totalling $4,500.00. The wall itself, 680 [sic] feet long by five feet high would take 3,762 blocks at a $1.20 each, in place would be an additional $4,514.00. The stone facing on the road side would calculate costs of $7.00 per square foot. The wrought iron top of the wall, $5.00 a square foot times 304 square feet, or $1,520.00.

A close examination of this testimony reveals, as the Government contends, that the expert's estimate contains computational errors with respect to the cost of laying the fence's foundation. More importantly, however, the expert's testimony, coupled with photographic exhibits introduced into evidence by plaintiff, depicting the present condition of Milliner's property, belies his statement that the fence described is of the same quality and type as that which already bounds three sides of Milliner's home. The fence described by the expert consists of a block wall five feet high, topped by a wrought iron deck railing, and faced with a native stone veneer. The photographic exhibits of Milliner's property reveal that the fence already in place consists of a block wall no more than two feet high, painted red on both sides and topped by white wooden rails. The present fence is not topped by wrought iron nor is it faced with a stone veneer. Although this discrepancy might seem at first to be a trivial matter, it should be noted that of the total cost of fencing testified to by the expert, over two-thirds of that total, $21,280.00, was based on the cost of the native stone fencing.

We agree with the district court's conclusion that the cost of suitable fencing was an appropriate element of the award of compensation Milliner is entitled to receive. However, on the basis of the record before us it is apparent that the district court was misled by the expert's testimony when it awarded $31,814.00 to Milliner for the construc-

126

tion of fencing similar in type and quality to that already in place on his property. The fence described by the expert is obviously substantially more elaborate than that already in place and thus we conclude that the district court's finding as to the cost of suitable fencing was clearly erroneous. A contrary holding would require the Government to foot the bill for improvements to Milliner's property that are not commensurate with the damage that property has suffered. "[T]he court cannot be openhanded with the public purse. Rather, it must be guided by the admonition . . . that 'the compensation to be awarded must not only be just to the owner but it must be just to the public who is to pay for it.' " Government of Virgin Islands v. 50.05 Acres of Land, 4 V.I. 239, 244, 190 F.Supp. 543, 545–46 (D.V.I. 1961) (Hastie, J.).

Thus, we will vacate the judgment entered for plaintiff in this case and direct the district court on remand to reconsider that portion of its award based on damages accruing to Milliner's remaining property as a result of the partial taking. The district court is authorized to reopen the record in this case if such action is necessary to implement the terms of the remand.

### F.

█ Finally, the Government contends that the judgment entered by the district court was not consistent with the relief awarded since it failed to direct plaintiff to convey to the Government title to the road upon payment of the damages awarded. The district court stated in its oral opinion that, "It goes without saying, upon payment of just compensation, the property will be that of the Government." On remand, the district court should give effect to that conclusion by directing Milliner to convey title to the paved road upon payment by the Government of the compensation awarded him.

## III.

The judgment of the district court will be vacated and remanded for proceedings consistent with this opinion.