Richard D. ALBERT, Appellee,

v.

KEVEX CORPORATION, Appellant.

Richard D. ALBERT, Appellant,

v.

KEVEX CORPORATION, Appellee.

Appeal Nos. 83–720, 83–781.

United States Court of Appeals, Federal Circuit.

March 6, 1984.

TIAN SCIENCE." [WEBSTER'S seventh New Collegiate dictionary.]

David B. Harrison and Michael Baker, San Mateo, Cal., argued for appellant.

Julian Caplan, Menlo Park, Cal., submitted for appellee.

Before RICH, DAVIS, BENNETT, MILLER and SMITH, Circuit Judges.

RICH, Circuit Judge.

These two appeals derive from a patent case in which the original complaint contained three counts and an amended complaint contained two more, pleading a total of five causes of action. The first two were suits by Albert against Kevex Corporation (Kevex) for the infringement of two patents owned by Albert and are not before us. The third count was a type of action now rarely seen, an "interfering patents" suit predicated on 35 U.S.C. § 291,[1] and has given rise to appeal No. 83–720. The fourth count, based on California state law, is entitled "Wrongful Interference With Prospective Business Advantage," and the fifth count is for violation of the Sherman and Clayton Acts. Counts four and five are the subject of appeal No. 83–781.

In this suit before Judge Eugene F. Lynch in the District Court for the Northern District of California, the court entered an order on December 23, 1982, granting Albert's motion for summary judgment holding invalid a patent owned by Kevex, No. 3,919,548 to David E. Porter (Porter patent).

It is important to note that the Porter patent was before the court only by reason of Albert's allegation, denied by Kevex, that it interfered with one of Albert's two patents in suit, No. 4,260,885 ('885 patent), alleged to be infringed by Kevex.

---

**1.** This statute reads:

§ 291. *Interfering patents*

The owner of an *interfering* patent may have relief against the owner of another by civil action, and the court may adjudge the question of the validity of any of the *interfering* patents, in whole or in part. The provisions of the second paragraph of section 146 of this title shall apply to actions brought under this section. [Emphasis ours.]

Two or more patents "interfere"—a term of art in patent law—when they claim the same subject matter. Interference between patents is to be distinguished from *an* interference, which is the name of a proceeding in the Patent and Trademark Office. A civil action under § 291 is called an "interfering patent suit." The predecessor statute to § 291 was Sec. 4918 R.S. and similar statutes have existed since 1836. *See* E. Stringham, "Patent Interference Equity Suits" § 7911.

The Porter patent was held invalid by summary judgment under 35 U.S.C. § 102(b) on the ground that the device claimed therein had been in public use or on sale more than one year before Porter filed his application. Kevex appeals from that holding, appeal No. 83-720.

The trial court entered another order on January 13, 1983, granting a motion for partial summary judgment by Kevex holding that Albert's fourth and fifth counts are barred by statutes of limitations, a two-year statute under California law and a four-year statute under federal law, respectively. Albert appeals from that holding, appeal No. 83-781.

These two appeals, which involve entirely distinct issues, were combined for oral argument. Herein we shall consider them separately.

 A preliminary matter common to both appeals has been raised, however, by the contentions of both parties that this court should not consider the appeals because they are not from a final judgment within the meaning of 28 U.S.C. § 1292(c) or (d), or 28 U.S.C. § 1295, because Counts 1 and 2 of Albert's complaint had not yet been adjudicated when these appeals were filed. *See Veach v. Vinyl Improvement Products Co.,* 700 F.2d 1390, 217 USPQ 97 (Fed.Cir.1983).

This court has previously denied Albert's motion to dismiss appeal No. 83-720, and adhered to that decision on reconsideration, saying that this case is factually distinguishable from *Veach* in that it presents an issue wholly separable from the remainder of the case before the district court. The court has similarly denied Kevex's motion to dismiss appeal No. 83-781. The court's disposition of these motions has settled whether this court has jurisdiction to hear these appeals.

*Appeal No. 83-720*

Albert, the plaintiff below, is the sole named inventor in the '885 patent, issued April 7, 1981, and entitled "Selectable Wavelength X-Ray Source, Spectrometer and Assay Method." The '885 patent describes and claims an apparatus and method for practicing X-ray spectroscopy. Briefly, X-ray spectroscopy involves bombarding a sample of material with X-rays to determine its elemental composition. The incident X-rays cause the elements in the sample to fluoresce x-rays, that is, to produce X-rays themselves, each at its own characteristic wavelength. Spectral analysis of the fluoresced X-rays then yields the elemental composition of the sample. The application for the '885 patent was filed on February 24, 1978, claiming entitlement to the filing date of a great-grandparent application filed April 24, 1973, under 35 U.S.C. § 120.

Kevex was the defendant below. It owns the Porter patent, which issued on November 11, 1975, and is entitled "X-Ray Spectrometer System." The Porter patent was filed for on July 24, 1974, and claims entitlement to no earlier date.

Albert filed the complaint in this action on July 20, 1981, about three months after his '885 patent issued. Count 3 of the complaint, the only count involved in this appeal, alleged that:

> an interference exists between said Kevex patent (No. 3,919,548) and said Albert patent (No. 4,260,885) in that said Kevex patent relates to [sic; claims] the same invention as claims 1, 2, and 9 of the said Albert patent.

On August 9, 1982, Albert moved for summary judgment that "the [Porter] patent of Kevex Corporation ... is invalid on the grounds that it was in public use, on sale, or sold more than one year prior to the date of the application therefor, wherefore said patent is invalid as a matter of law." [2]

---

**2.** 35 U.S.C. § 102(b) is the basis of this assertion and reads:

A person shall be entitled to a patent unless—

. . . .

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date

Albert's assertion of invalidity was based on several sales by Kevex of spectrometers allegedly embodying the subject matter claimed in its '548 patent more than one year before its filing date, i.e., before July 23, 1973. On August 24, 1982, Kevex objected to the trial judge's assertion of subject matter jurisdiction over Albert's § 291 count because Albert had not shown interference between the Porter and '885 patents, i.e., that they claimed the same invention, as required for subject matter jurisdiction under § 291. This argument was incorporated by reference into Kevex's later-filed memorandum in opposition to Albert's motion for summary judgment, which also included an assertion of the case law "experimental use exception" to the § 102(b) public use and on sale one-year bars.

On October 27, 1983, Kevex filed a disclaimer in the U.S. Patent & Trademark Office (PTO) under 35 U.S.C. § 253 [3] and 37 CFR 1.321 of claims 1, 2, and 3 of the Porter patent, at the same time informing the trial judge of the action it had taken. Kevex asserts in its brief that the trial judge then "ruled orally from the bench at a status conference ... on October 29, 1982, that count 3: interfering patents was mooted." Kevex also asserts that the trial judge at the same status conference indicated that he still intended to pass on the validity of the Porter patent.

On December 23, 1982, the trial judge granted Albert's motion for summary judgment on Count 3. He held that there were no genuine issues as to whether Kevex had offered for sale the device claimed in the Porter patent more than one year before its filing date, and that the experimental use exception did not apply. The trial judge did not mention whether the Porter patent

had ever interfered with the '885 patent, or whether Kevex had, since the commencement of the action, disclaimed all interfering subject matter. With respect to jurisdiction, the trial judge limited his analysis to an assertion in the last numbered paragraph of his order that "The Court has jurisdiction over the subject matter involved pursuant to 27 [sic, 28] U.S.C. § 1338 and 35 U.S.C. § 1 et seq."

Kevex argues that under § 291 the existence of an interference is jurisdictional, so that the district court was required to ascertain whether the Porter patent and the '885 patent interfere before determining the validity of either. Albert maintains just the opposite: that under § 291, if a court is shown that one of the *allegedly* interfering patents is invalid, it can and indeed must hold that patent invalid regardless of whether it has determined that the patents before it interfere. Albert bases his argument primarily on § 291's provision that "the court may adjudge the question of validity of any of the interfering patents, in whole or in part," a cart before the horse argument.

■ We agree with Kevex. The major shortcoming with Albert's argument is apparent. Even the portion of § 291 upon which he relies plainly states that the question of validity of *interfering* patents may be adjudged. The first phrase of § 291 states with equal clarity that the owner of an *interfering* patent may sue thereunder. The section is even entitled "Interfering patents." Under any construction of § 291, it is impossible to conceive how it could be any clearer that interference between patents is a sine qua non of an action under § 291. Absent interference, a court has no power *under § 291* to adjudicate the validity of any patent. We hold

---

of the application for patent in the United States. . . .

**3.** § 253. *Disclaimer* [in pertinent part]

Whenever, without any deceptive intention, a claim of a patent is invalid the remaining claims shall not thereby be rendered invalid. A patentee, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of

any complete claim, stating therein the extent of his interest in such patent. Such disclaimer shall be in writing and recorded in the Patent and Trademark Office, and it shall thereafter be considered as part of the original patent to the extent of the interest possessed by the disclaimant and by those claiming under him.

that the court has no jurisdiction under § 291 unless interference is established. Mere citation of that statute or recitation in a pleading as a basis for suit is not enough. When challenged, the pleader must establish that interference does in fact exist.

If the statute leaves a doubt that interference is a jurisdictional prerequisite under § 291, it should have long since been dispelled by P.J. Federico, the principal drafter of the 1952 Patent Act, in his "Commentary on the New Patent Act," published as a prologue to 35 USCA (West 1954), at p. 57:

> Section 291 relates to interfering patents. When there are interfering patents, the owner of one may file a civil action against the owner of the other and the court may adjudge either or both the patents invalid. The new section has considerably condensed the language of the old statute. Under the old statute, interfering patents arose mostly if not always when a second patent for the same invention, with identical claims, was granted to another inventor who had won an interference with the first patentee in the Patent Office. The losing patentee could not file a civil action against the winning applicant, but could file an interfering patents suit against the winning applicant after the second patent had been granted. In view of the change in the civil action to review an interference decision which permits a losing patentee to file such action (section 146) and the change in the interference section relating to cancellation of the claims of a losing patentee when the interference decision becomes final (section 135), the mentioned occasion for interfering patents will no longer arise, and there will be little or no use for section 291.

The small number of cases decided under § 291 since 1952 bears out the accuracy of Mr. Federico's appraisal of its continued usefulness. More importantly for this case, his comments verify that the existence of interfering patents is intrinsically and inextricably a premise of a § 291 claim.

If that premise fails, then the § 291 claim dependent thereon fails as well.

Finally, the jurisdictional stature of the existence of interfering patents under § 291 is seen simply by noting what that section is, and, perhaps more importantly, what it is not. If validity were adjudicable under § 291 without regard to whether interference exists, then § 291 would, in effect, be an American counterpart of a so-called "nullity action" found in the patent laws of some other countries. Congress, of course, had the power to create such an action in this country when it enacted § 291, but, had it wished to do so, it would not have worded § 291 as it did. Section 291 is not a basis for a nullity action, it is solely the basis for an action to eliminate interference between patents. Until it is determined that there are patents which do, in fact, interfere, § 291 simply does not apply. Nor is § 291 comparable to the declaratory judgment statute.

■ Questions that require resolution before the issue of the invalidity of the Porter patent can be addressed are, first, whether the Porter and Albert patents interfered with one another at the commencement of this action; and, second, if they did, whether they still interfered after Kevex disclaimed claims 1, 2, and 3 of the Porter patent. We have no intimation of an answer to the first question from either Albert or the trial judge. Kevex's arguments emphasize the PTO's refusal to declare an interference between the Porter patent and Albert's application during prosecution of the latter. As for the effect of the disclaimer, Albert did not limit his complaint to any particular claims of the Porter patent; he alleged broadly that the Porter *patent* "related to" subject matter he had claimed in his own '885 patent. As noted, however, Kevex asserts in its brief that the trial judge "ruled orally from the bench at a status conference on October 29, 1982, that count 3: interfering patents was mooted." Kevex also informs us that this status conference was "unreported." No transcript of any part of it appears in the appendix submitted to the court in either

appeal. Kevex's assertion, unchallenged by Albert, suggests that the trial judge did hold, albeit informally, that after Kevex's disclaimer, there were no interfering patents. Although this conclusion was oral and unreported, we see no reason for remanding the case merely to enable the district court to make a written conclusion that the Albert and Porter patents do not interfere. Oral findings and conclusions by the district court are sufficient to indicate the basis of the trial judge's decision and provide an adequate basis for appellate review. *Milliner v. Government of the Virgin Islands*, 593 F.2d 532, 534 (3d Cir. 1979). Accordingly, we vacate the summary judgment granted December 23, 1982, on count 3 and remand to the district court with instructions to dismiss this count for lack of jurisdiction.[4]

### Appeal No. 781

On August 27, 1982, with leave of court, Albert filed a first amended complaint adding two more counts: Count 4, alleging that Kevex had wrongfully interfered with Albert's prospective business advantage, a tort cognizable under the laws of the State of California; and Count 5, alleging that Kevex had violated federal antitrust law by attempting to monopolize the market for spectrometers such as those claimed in the Porter patent. The factual basis for both of these added counts is the same. Albert alleges that in 1976, EDAX, a branch of North American Philips Corporation, broke off negotiations with Albert on the possible licensing of his invention. He further alleges that he discovered in 1981 that the reason EDAX had broken off negotiations was that Kevex had threatened EDAX with an action for infringement of its Porter patent by one of EDAX's devices, and that this threat had soured EDAX on using any

device similar to that claimed in the Porter patent, including that offered by Albert.

On October 8, 1982, Kevex moved for partial summary judgment on Counts 4 and 5 of Albert's first amended complaint. Its grounds were that because the last overt act complained of by Albert occurred in 1976, and he had not commenced the action below until 1981, his Count 4 claim of wrongful interference with prospective business advantage is barred by California's two-year statute of limitations for this action, Cal.Civ.Proc.Code § 339(1), and his Count 5 claim for violation of federal antitrust law is barred by the four-year statute of limitations for bringing such actions, 15 U.S.C. § 15b.

On January 13, 1983, the trial judge entered a written order granting, without elaboration, Kevex's motion for partial summary judgment on Counts 4 and 5.

On appeal, Albert alleges that Kevex's failure to inform the PTO of its pre-critical-date spectrometer sales worked a fraudulent concealment of the invalidity of the Porter patent. This is said to have tolled the running of both statutes of limitations until such fraudulent concealment actually was or should have been discovered. In this case, Albert alleges that the statutes were tolled sufficiently so as not to bar as untimely Albert's Count 4 and Count 5 claims.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Albert's tolling claim in this case depended on the existence of fraud, a legal question based on factual findings on materiality and intent, and on whether, as a matter of law, this type of fraud tolls the statute of limitations. The trial judge's bare order, although not inappropriate, leaves open the

---

4. We are cognizant of two well-established principles of federal jurisdiction: (1) that federal question jurisdiction is created by a nonfrivolous assertion of a federal claim in a well-pleaded complaint; and (2) that federal jurisdiction, once established, is not ordinarily defeated by a subsequent change in circumstances. We note that the latter principle is most frequently in-

voked in cases dealing with jurisdictional prerequisites divorced from the merits of the asserted claim, such as jurisdictional amount and diversity of citizenship. A claim under § 291, however, depends so completely on the existence of interference that lack of it, whenever it becomes apparent, must be deemed fatal to jurisdiction.

questions whether he granted summary judgment on the basis that (1) there was no dispute that there was no intent (materiality being manifest, at least to the trial judge) or (2) that this type of fraud cannot toll a statute of limitations as a matter of law.

■ Whatever the grounds, the granting of summary judgment was not appropriate in this case. Intent is a factual matter which is rarely free from dispute, and we do not see how it can be said that it is free from dispute in this case. *See Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962) (summary judgment should rarely be used in complex antitrust litigation where motive and intent play leading roles). Inasmuch as intent may be critical in this case, cutting off Albert's right to a trial on the issue was improper.

As for the legal matters, we are not willing to hold as a matter of law at the present stage of this case that so-called fraud in the PTO can never result in a fraudulent concealment which tolls a statute of limitations. Under certain circumstances, it may be possible that information an applicant submitted to or withheld from the PTO, as the representative of the interests of the public, may amount to a fraudulent concealment by means of which he has received an invalid patent. The presumptively valid patent might be shown to have caused individuals who would have otherwise challenged its validity to sit by idly. We do not intimate that this is true in every case or even that it is true in this case. We hold only that it is not untrue as a matter of law, and that Albert should not be deprived of the opportunity to prove facts which might make tolling proper in this case. We therefore vacate the January 13, 1983, grant of summary judgment on Counts 4 and 5, and remand for further proceedings consistent with this opinion.

## Conclusion

In Appeal No. 83–720, the trial court's grant of summary judgment of December 23, 1982, on Count 3 holding the Porter patent invalid is *vacated* and the case is *remanded* with instructions to dismiss this count for lack of jurisdiction.

In Appeal No. 83–781, the trial court's grant of summary judgment of January 13, 1983, on Counts 4 and 5 is *vacated* and the case is *remanded* for further proceedings consistent with this opinion.

VACATED AND REMANDED.

EDWARD S. SMITH, Circuit Judge, joining as to Appeal No. 83–781 and concurring in result as to Appeal No. 83–720.

I agree with the majority opinion and the result in Appeal No. 83–781. I concur in the result in Appeal No. 83–720, but it is my opinion that the 35 U.S.C. § 291 issue, decided by the majority in that appeal, is not an issue of jurisdiction. Rather, the issue is whether Albert has established or failed to establish an essential element of his cause of action under 35 U.S.C. § 291 (1976).

I share Judge Davis' view of 35 U.S.C. § 291 that *jurisdiction* in this case does not depend upon the actual existence of two interfering patents. Jurisdiction of the district court in an interfering patent suit depends on a good faith, non-frivolous and substantial assertion of the existence of interfering patents by the plaintiff, *i.e.,* of a "civil action arising under any Act of Congress relating to patents," 28 U.S.C. § 1338(a) (1976). Thus, the civil action alleged to exist arises under section 291, but jurisdiction over such civil actions is conferred on the district courts by section 1338(a). I fully agree with Judge Davis that the existence of interfering patents need not be determined in a preliminary trial and decision on that issue before jurisdiction is acquired.

Contrary to Kevex's argument, the existence of an interference is not jurisdictional. While I agree with the majority, that interference between patents is a sine qua non of an action under section 291, the failure of a plaintiff to prove that element of his cause of action under section 291 does not deprive the court of jurisdiction. Jurisdic-

tion has been established under 28 U.S.C. § 1338.

The majority is incorrect in its conclusion that, absent interference, a court has no *power* under section 291 to adjudicate the validity of any patent. The court has "power" by virtue of its jurisdiction under section 1338; however, absent interference, the issue of validity is not properly placed before the court for decision.

Because the issue of the validity of the Porter patent is not properly before the district court, the district court cannot grant Albert the relief requested under section 291.

> Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. *Swafford v. Templeton*, 185 U.S. 487, 493, 494 [22 S.Ct. 783, 785, 786, 46 L.Ed. 1005]; *Binderup v. Pathe Exchange*, 263 U.S. 291, 305–308 [44 S.Ct. 96, 98–99, 68 L.Ed. 308]. [Footnote omitted.] * * *

*Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

The disclaimer of claims 1, 2, and 3 of the Porter patent effectively made the issue of interfering patents moot. Albert could not establish that the patents interfere, thus no interfering patents were presented to the trial court for a ruling on validity. No case or controversy remained. I would vacate the summary judgment granted December 23, 1982, on count 3 and remand to the district court with instructions to dismiss the cause of action under section 291 as moot.

DAVIS, Circuit Judge, joining as to Appeal No. 83–781 and dissenting as to Appeal No. 83–720.

I agree with the opinion and the result in Appeal No. 83–781, as well as with the holding that our jurisdiction over both appeals has already been decided. I dissent from the opinion and result in Appeal No. 83–720.

My view of 35 U.S.C. § 291 is that the district court's jurisdiction under that provision[1] does not depend upon the *actual* existence (as finally determined by the court at the time of decision) of two interfering patents but rather depends on a good faith, non-frivolous and substantial assertion of such interference by the plaintiff. That is the general method for determining other requirements for federal jurisdiction (*e.g.,* federal questions, diversity of citizenship, amount). *Ralston Steel Corp. v. United States,* 340 F.2d 663, 666–669, (Ct.Cl.), *cert. denied,* 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965);[2] Moore's Federal Practice, pars. 0.91[3], 0.92[1], 8.11. I see no adequate reason for departing from that overall principle or for holding that § 291 requires *actual* interference (at the time of decision) before jurisdiction is acquired. The majority's holding calls for a preliminary trial and decision on that issue before the district court has jurisdiction to consider whether one of the alleged-

1. I need not decide definitively whether § 291 is a jurisdictional provision at all, or whether, as Judge Smith would hold, the only relevant jurisdictional provision is 28 U.S.C. § 1338. In either event (in my view) the result here should be the same.

2. *Ralston* was a case in which the jurisdiction of the Court of Claims was closely entwined with the merits and yet the court applied the general rule. Contrast footnote 4 of the majority opinion.

ly interfering patents is invalid;[3] if the first trial on jurisdiction results in a determination of actual interference there will have to be a second trial on the issue of validity. Neither the language nor the history of § 291 requires that special, wasteful procedure with respect to this particular jurisdictional provision.

The court's opinion suggests that the only alternative to its construction calling for *actual* interference is that federal jurisdiction to pass on validity under § 291 follows upon a mere allegation of interference. That is not the federal jurisdictional principle, nor is it my position. The proper rule (as I see it) is that there must be a good faith, non-frivolous, substantial assertion of interference—the type of assertion which can be preliminarily tested (without full trial) by the parties and the court to see whether that standard is met. This would plainly be no counterpart to a foreign "nullity action", as the majority fears, but rather a counterpart to the very common claim or counterclaim (in this country) for a declaratory judgment of invalidity.[4] Moreover, this interpretation of § 291 would not only accord with general principles of federal jurisdiction but would also supply a ready test for deciding whether the district court possesses jurisdiction over such an interference case under § 291.

Even if there has to be an actual interference at the beginning of the suit, I cannot agree that the defendant can destroy jurisdiction (as is said to be true here) simply by disclaiming the claims of his patent which create the interference. That would allow the defendant to destroy jurisdiction whenever he deems it convenient, and turns drastically away from the normal rule that federal jurisdiction is measured at the outset of the suit.[5] And if § 291 does no more than create a claim when jurisdiction is otherwise present, my view is that

the section establishes a right to pursue a claim of invalidity, not only when there exist actual interfering patents, but also where there is a substantial, good faith claim of interference at the time suit is brought. The statutory direction to consider invalidity (on any ground) "in whole or in part" (see footnotes 3 and 5, *supra*) seems to me to point in that direction.

In my view, this case (No. 83–720) must be remanded. The trial judge has made no finding that the initial summary assertion of interfering patents was made in good faith, and was substantial and non-frivolous, or that the disclaimer of three claims of the Porter patent in No. 83–720 was not made in good faith but to avoid § 291. I would return the case so that those issues can be considered; if the answer is affirmative, I would hold that the court has and has had jurisdiction to decide the validity of the Porter patent.

---

3. The language of § 291 indicates clearly that Congress fully opened up the question of validity and did not restrict it solely to the issue of priority.

4. The counterpart is that, instead of a substantial claim that one *may* be held to have infringed, § 291 requires a substantial claim that the patents *do* interfere.

5. The court's construction on this point seems to me to conflict with the plain intention of § 291 to allow the interfering patents to be held invalid on *any* ground. *See* fn. 3, *supra*.