### JJK INDUSTRIES

v.

### KPLUS INC., et al.

**Civil Action No. H–02–2259.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 30, 2006.

Charles John Rogers, Thomas L. Warden, Conley Rose PC, Houston, TX, Mikal C. Watts, Watts Law Firm LLP, San Antonio, TX, for JJK Industries.

Craig Welscher, Attorney at Law, Ernest W. Boyd, Jr., Eric Michael Adams, Mehaffy & Weber PC, James Collins Ferrell, Robert G. Taylor II PC, Houston, TX, F. Stephen Schmid, Attorney at Law, San Francisco, CA, Jeffrey Scott Schubert, Erik Joseph Osterrieder, Schubert Osterrieder et al, Austin, TX, for KPlus Inc., Eric Klein, Silver Moon Concepts Inc., Silver Moon Concepts LLC., Michael Gouda.

David N. Glassman, Attorney at Law, Herbert L. Allen, Allen Dyer et al, Orlando, FL, for Silver Moon Concepts Inc., Silver Moon Concepts LLC, Michael Gouda.

## AMENDED ORDER [*]

GILMORE, District Judge.

Pending before the Court is Plaintiff JJK Industries, L.P. ("JJK")'s Motion for Partial Summary Judgment on its Count III Interfering Patents Claim Under 35 U.S.C. § 291 (**Instrument No. 114**), filed on June 1, 2004.

[*] This Order was amended to correct minor citation and typographical errors prior to publication.

### I.

Pursuant to Section 291, Plaintiff JJK asks this Court to adjudge the question of validity of Claims 1, 2, 3, and 4 of Defendant Eric A. Klein ("Klein")'s United States Patent No. 6,419,649 ("the '649 patent"), which Plaintiff JJK asserts interferes with Claims 1, 2, 3, 4, 5, 8, 9, 12, 13, and 16 of JJK's United States Patent No. 6,382,815 ("the '815 patent").

Plaintiff JJK is the assignee of the '815 patent, entitled "Energized Body Jewelry." JJK filed an application for the '815 patent on May 16, 2000. The United States Patent and Trademark Office (the "PTO") issued the '815 patent on May 7, 2002. Jeffrey D. Klearman ("Klearman") and William R. Wilkinson ("Wilkinson") are the listed inventors of the '815 patent. (Instrument No. 116, Exh 1). H. David Shockley ("Shockley") is the President of JJK's general partner, BNC Management, LLC ("BNC").

Defendant Klein is the inventor of the '649 patent, entitled "Erotic Stimulation Device." Klein filed an application for the '649 patent on April 5, 2000, and the PTO issued the patent on July 16, 2002. Silver Moon Concepts, LLC (successor by merger to Silver Moon Concepts, Inc.) ("Silver Moon") is the exclusive distributor of Klein's products. Michael Gouda ("Gouda") is the president of Silver Moon. Despite the earlier filing date of Defendant Klien's patent application, the PTO issued Plaintiff JJK's patent two months prior to issuing Defendant Klein's patent.

Claims 1, 2, 3, and 4 of the '649 patent state:

1. A vibratory erotic stimulator, comprising:

publication.

a vibrator device comprising a battery-powered electric vibration generator, and a moisture resistant housing encasing said electric vibration generator,

a post of diameter suitable to be assembled through a pierced portion of the human body, the post having one end connected to the housing of the vibrator device,

a battery housing containing a battery, the battery housing being connected to the post, with means providing electrical connection from the battery to the electric vibration generator so as to provide electrical power for the electric vibration generator, and

means for retaining the post on such pierced portion of the body.

2. The device of claim 1, wherein said one end of the post is secured directly to the vibrator housing, and the post having an opposite end secured to the battery housing, so that the vibrator housing and battery housing are at opposed positions on the post so as to be at opposite sides of such pierced portion of the body when worn thereon, and wherein said means providing electrical connection comprises electrical conductor means in the post connecting power from the battery through the post to the electric vibration generator, said means for retaining the post comprising the opposed location of the vibrator housing and the battery housing at opposite ends of the post.

3. The device of claim 1, wherein the electric vibration generator comprises a pager motor, less than about 6 mm in diameter.

4. The device of claim 1, installed on a human tongue with the post passing through a pierced hole in the tongue.

'649 patent, col. 6, l. 64 to col. 7, l. 11. Claims 1–5, 8–9, 12–13 and 16 of the '815 patent state:

1. An apparatus comprising:

an elongated post with a first end and a second end;

a housing body connected to the second end of the post; and

the housing body enclosing a vibrator; and wherein the vibrator is an electromagnetic motor with an eccentric rotor; and

the retainer bridges an electrical connection between the electric power source and the electromagnetic motor.

2. An apparatus comprising:

an elongated post with a first end and a second end;

a housing body connected to the second end of the post; and

the housing body enclosing a vibrator; and wherein the vibrator is an electromagnetic motor with an eccentric rotor; and

the retainer encloses an electrical power source.

3. An apparatus according to claim 2 in which:

the retainer bridges an electrical connection between the electric power source and the electromagnetic motor.

4. An apparatus according to claim 2 in which:

the electrical power source is a battery having a positive pole and a negative pole; and

the electromagnetic motor has a positive lead wire and a negative lead wire.

5. An apparatus according to claim 4 with:

the retainer having a first end and second end; and

a battery cap attached to the first end of the retainer.

8. An apparatus according to claim 2 with:

the retainer enclosing a secondary electric power source.

9. An apparatus according to claim 8 in which:

the retainer bridges an electrical connection between the electric power sources and the electromagnetic motor.

12. An apparatus according to claim 2 further comprising:

an elastomeric band for attaching the apparatus to one's body.

13. An apparatus according to claim 8 further comprising:

an elastomeric ban for attaching the apparatus to one's body.

16. An apparatus comprising:

an elongated post with a first end and a second end;

a retainer connected to the first end of the post;

a housing body connected to the second end of the post; and

the housing body enclosing a vibrator; and wherein

the vibrator is an electromagnetic motor with an eccentric rotor;

the housing body encloses an electric power source;

the electric power source is a battery having a positive pole and a negative pole;

the electromagnetic motor has a positive lead wire and a negative lead wire;

the housing body has a first end and a second end;

a battery cap attaches to the first end of the housing body; and

a motor cap attaches to the second end of the housing body.

the retainer encloses an electrical power source.

'815 patent, col. 7, l. 41 to col. 9, l. 19. Both the '649 and the '815 patents involve battery-powered electric vibrator devices that are connected to one end of a two-ended post.

Plaintiff JJK argues that Claim 1 of Klein's '649 patent defines the same pat-entable invention as Claim 2 of JJK's '815 patent. In order to identify the common subject matter in the interfering claims, Plaintiff JJK submitted a proposed Interference Count. The term "Interference Count" is a term of art used in proceedings alleging interference with a patent lawfully issued by the United States Patent and Trademark Office. An "Interference Count" defines the common subject matter of the claims alleged to be interfering, and is used to determine whether two patent claims define the same patentable invention. Plaintiff JJK proposed the following Interference Count:

1. An apparatus comprising:

a housing enclosing a vibrator

a post;

the post having one end connected to the vibrator housing;

an electric power source to power the vibrator, the vibrator comprising an electromagnetic motor; and

means for attaching the post to one's body.

(Instrument No. 114, at 16).

Plaintiff JJK argues that JJK's inventors were the first to conceive, and the first to reduce to practice, the disputed invention as defined by them in the Proposed Interference Count. In support of its argument, Plaintiff has submitted a November 4, 1990 letter from co-inventor Wilkinson to Shockley, in which Wilkinson describes his idea for an oral vibrator. Wilkinson suggests that they "could package a [vibrator motor] in a small bullet shaped housing and screw a small battery pack to the end." Wilkinson further suggests that "[y]ou could hold in [sic, 'it'] on your tongue with a rubber band and *voilá*—super lover." (Instrument No. 114, Exh 8 at 5). Defendant Klein contests the authenticity of the November 4, 1990 letter. (Instrument No. 134, at 8–10).

Plaintiff has also submitted a February 26, 1999 letter from Wilkinson to Shockley, in which Wilkinson illustrates and describes to Shockley the conceived design of the invention, also stating that "the unit the jeweler made worked great." (Instrument No. 114, Exh 9). Plaintiff asserts that the "unit the jeweler made" represents the first prototype of the invention and that the February 26, 1999 letter illustrates the design for a second working prototype of the invention. (Instrument No. 114, Exh 14). Plaintiff further asserts that the second working prototype was built for its intended purpose, according to Wilkinson's February 26, 1999 letter, and delivered to Shockley on March 8, 1999. (Instrument No. 10, 11 & 14).

Plaintiff JJK argues that the earliest date for which Klein has any documentary evidence to establish his conception of the invention is April 11, 1999—through entries in Defendant Klein's Notebook No.1, dated April 11, 1999. (Instrument No. 114, Exh 23). Plaintiff asserts that Defendant Klein's witnesses, Ricky L. King ("King") and David R. Steele ("Steele"), have confirmed that Klein's disclosure to them prior to April 11, 1999, did not include any specifics regarding the structure of the invention. Specifically, Plaintiff asserts that King testified in oral deposition that, during the time period prior to April 11, 1999, Klein's disclosure of his invention to King "was just in general terms" and did not include any specifics regarding the structure of the invention that Klein was discussing with King. (Instrument No. 114 at 20, Exh 27 at 49–50). Plaintiff further asserts that Steele testified in oral deposition that Klein just generally shared the idea with him, but did not provide any specifics about the structure of the invention. (Instrument No. 114, Exh 28 at 63).

On June 24, 2004, Defendant Klein filed a Response in Opposition to Plaintiff JJK Industries, L.P.'s Motion for Partial Summary Judgment on its Count III Interfering Patents Claim Under 35 U.S.C. § 291. (Instrument No. 134). Defendant Klein argues that Plaintiff's proposed interference count is erroneous, and that interfering subject matter does not exist. Specifically, Defendant Klein asserts that the different words used in the allegedly interfering claims creates a presumption of a different meaning for the words. Defendant also asserts that Plaintiff failed to analyze Defendant's "means-plus-claim" ("means for retaining the post") by reference to other parts of Defendants' patent. Defendant finally contends that Plaintiff's "morphing" of the claims in order to define the interference count was improper under the Manual of Patent Examining and Procedure. (Instrument No. 134, at 3–8).

With regard to priority of invention, Defendant argues that Plaintiff's "sole evidence of prior conception" is the 1990 letter from Wilkinson to Shockley, and that the 1990 letter was "concocted by three interested parties, namely Wilkinson, Shockley, and Rogers, each of who own a direct or indirect equity interest in Plaintiff JJK Industries, L.P." Accordingly, Defendant asserts that the alleged 1990 letter is insufficient corroboration evidence of JJK's prior conception. (Instrument No. 134, at 8–10). Finally, Defendant argues that Plaintiff never points to any evidence of testing or test results to show that the second working prototype would work for its intended purpose, as is required for proving reduction to practice. (Instrument No. 134, at 10). On August 6, 2004, Plaintiff JJK filed a Reply in Support of its Motion for Partial Summary Judgment on its Count III Interfering Patents Claim Under 35 U.S.C. Section 291. (Instrument No. 147). Plaintiff JJK argues that "[b]ecause this Court's subject matter jurisdiction over Plaintiff JJK's Count III interfering patents claim under Section

291 depends upon the existence of an interference-in-fact, Defendants' assertion that there is no interference should be treated as a Rule 12(b)(1) challenge to this Court's jurisdiction." Plaintiff next argues that an application of the "two-way test" demonstrates that an interference-in-fact does exist, including Defendant Klein's "means-plus-claim." Plaintiff further argues that Wilkinson's November 4, 1990 letter is the documentary corroboration of Wilkinson's oral testimony regarding his early conception of the invention, and not the other way around. Plaintiff contends that even if the 1990 letter were "concocted," as alleged by Defendant, that JJK has evidence of its reduction to practice of the invention as early as March 8, 1999, with the construction of a second working prototype. Plaintiff finally argues that its construction of the second working prototype on March 8, 1999, is prior to the earliest date, April 11, 1999, for which the Defendant Klein has any documentary evidence to establish his date of conception.

## II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Anderson,* 477 U.S. at

249–50, 106 S.Ct. 2505; *see Lewis v. Glendel Drilling Co.,* 898 F.2d 1083, 1088 (5th Cir.1990), *cert. denied,* 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991).

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'*" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leonard,* 828 F.2d at 294. To sustain the burden, the nonmoving party must produce evidence admissible at trial. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue....").

The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.,* 207 F.3d 776, 781 (5th Cir.2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

Summary judgment is as appropriate in a patent case as in any other case, where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988) ("[T]his court has repeatedly emphasized that 'summary judgment is as appropriate in a patent case as in any other.' ").

## III.

### A.

■ Pursuant to 35 U.S.C. § 291, Plaintiff JJK asks this Court to adjudge the question of validity of Claims 1, 2, 3, and 4 of Defendant Eric A. Klein ("Klein")'s United States Patent No. 6,419,649 ("the '649 patent"), which Plaintiff JJK asserts interferes with Claims 1, 2, 3, 4, 5, 8, 9, 12, 13, and 16 of JJK's United States Patent No. 6,382,815 ("the '815 patent"). "Two or more patents 'interfere'—a term of art in patent law-when they claim the same subject matter." *Albert v. Kevex Corp.,* 729 F.2d 757, 759 n. 1 (Fed.Cir.1984).

■ Although interference actions most often arise before the PTO, this Court has subject matter jurisdiction over interference actions under 35 U.S.C. § 291. *See Albert,* 729 F.2d at 760–65. 35 U.S.C. § 291, entitled "Interfering Patents," provides a cause of action to one patent owner against another patent owner when the inventions claimed by their respective patents interfere with one an-

other. Interfering patents occur when the PTO mistakenly issues two patents for the same invention.[1] In the rare instance in which the PTO makes such a mistake, Section 291 provides the patent owners the opportunity to have a Federal court correct the mistake. *See Slip Track Sys., Inc. v. Metal–Lite, Inc.,* 304 F.3d 1256, 1263 (Fed.Cir.2002) ("This case, however is one of a handful where the interference is between issued patents and arises in district court . . . ."); *see also Albert,* 729 F.2d at 758 ("The third count was a type of action now rarely seen, and 'interfering patents' suit predicated on 35 USC § 291.").[2] According to the Manual of Patent Examining Procedure, "[a]t present, fewer than one percent of all applications become involved in interferences." MPEP § 2301.01 Introduction, at 2300–2, col. 2. Presumably, an even smaller percentage of patents become involved in interfering patent proceedings.

■ "In order to provoke an interference in district court under § 291, the interfering patents must have the same or substantially the same subject matter in similar form as that required by the PTO pursuant to 35 U.S.C. § 135." *Slip Track,* 304 F.3d at 1264. *See also Medichem S.A. v. Rolabo S.L.,* 353 F.3d 928, 934 (Fed.Cir. 2003) ("Though the PTO regulations do not bind a district court, a district court defines 'the same or substantially the same subject matter' in the same manner as would the PTO under its own regulations

---

**1.** According to the Manuel of Patent Examining Procedure, "[t]he United States Patent and Trademark Office (USPTO) does not have jurisdiction to conduct interferences which involve only patents, i.e., which do not involve at least one pending application. Jurisdiction over those proceedings is conferred on the Federal courts by 35 U.S.C. 291." MPEP § 2301.01 Introduction, at 2300–2, col. 2.

**2.** The Federal Circuit in *Slip Track* noted that "The 1952 Patent Act amended interference

law to significantly diminish the likelihood of interfering patents being issued, causing commentator and principal drafter of the 1952 Patent Act", P.J. Federico to opine that "the . . . occasion for interfering patents will no longer arise, and there will be little or no use for section 291." *Slip Track,* 304 F.3d at 1264, n. 2 (citing P.J. Federico, "Commentary on the New Patent Act" 35 U.S.C.A. 1, 57 (West 1954)).

....."). A district court "has no jurisdiction under § 291 unless interference is established." *Albert,* 729 F.2d at 760–61. "Thus, the first step in any interference proceeding under § 291 is the evaluation of whether an interference-in-fact exists." *Medichem,* 353 F.3d at 934.

According to the regulations outlining interference proceedings in the PTO, "an interference-in-fact exists when at least one claim of a party that is designated to correspond to a count and at least one claim of an opponent that is designated to correspond to the count define the same patentable invention." 37 C.F.R. § 1.601(j) (2004). The terms "count" and "same patentable invention" are defined by separate subsections of the same regulation. 37 C.F.R. § 1.601(f) & (n) (2004).

■ The test for determining the "same patentable invention" is referred to as the "two-way test." *Eli Lilly & Co. v. Bd. of Reg. of the Univ. of Wash.,* 334 F.3d 1264 (2003). As has been explained by the Board of Patent Appeals & Interferences:

> Invention "A" is the same patentable invention as an invention "B" when invention "A" is the same as (35 U.S.C. 102) or is obvious (35 U.S.C. 103) in view of invention "B" assuming invention "B" is prior art with respect to invention "A". Invention "A" is a separate patentable invention with respect to invention "B" when invention "A" is new (35 U.S.C. 102) and non-obvious (35 U.S.C. 103) in view of invention "B" assuming invention "B" is prior art with respect to invention "A".

37 C.F.R. § 1.601(n) (2004). In other words, "[i]n order for an interference-in-fact to exist, invention A must anticipate or make obvious invention B, and invention B must anticipate or make obvious invention A", thereby meeting both prongs of the "two-way" test. *Noelle v. Lederman,* 355 F.3d 1343, 1351 (Fed.Cir.2004) (citing *Eli Lilly,* 334 F.3d at 1268; *Winter v. Fujita,*

53 U.S.P.Q.2d 1234, 1243, 1999 WL 1327616 (Bd.Pat.App. & Interf. Nov. 16, 1999)).

■ "The count defines the interfering subject matter and corresponds to a patentable invention. The count may be identical to a single claim at issue or may be broader than the particular claims at issue." *Slip Track,* 304 F.3d at 1263; 37 C.F.R. § 1.601(f) (2004). According to the regulations outlining interference proceedings in the PTO:

> Before an interference is declared between an application and an unexpired patent, an examiner must determine that there is interfering subject matter claimed in the application and the patent which is patentable to the applicant subject to a judgment in the interference. The interfering subject matter will be defined by one or more counts. The application must contain, or be amended to contain, at least one claim that is patentable over the prior art and corresponds to each count. The claim in the application need not be, and most often will not be, identical to a claim in the patent. All claims in the application and patent which define the same patentable invention as a count shall be designated to correspond to the count.

37 C.F.R. § 1.606 (2004); Manual of Patent Examining and Procedure ("MPEP") § 2306 Interference Between Applications, 2300–6, col. 2.

The court in *Slip Track* noted that the Federal Circuit "has not yet had the occasion to determine whether district courts handling interfering patent suits under § 291 must define [the] interfering subject matter in a way similar to a count." *Id.* at 1264. However, the Federal Circuit has held that "given interfering patents, a single description of the interfering subject matter is necessary for a determination of priority." *Id.* In *Slip Track,* the Federal

Circuit did not reach the issue of whether a "count" was necessary in a § 291 interfering patents proceeding, because there was no dispute that the patents in that case interfered. The parties in *Slip Track* only disputed whether one limitation was part of the interfering subject matter. *Id.* at 1265. Thus, *Slip Track* does not provide clear guidance as to whether this District Court must define the interfering subject matter in a way similar to a count in this case.

■ Usually an interference count is defined by the patent examiner. *See* 37 C.F.R. § 1.606 (2004), *infra*. However, an interference count may be "proposed" by an applicant or patent holder wishing to declare an interference. Under the old interference rules, a party had to establish that he had the right to make an interference count. 37 C.F.R. § 1.205(a) (1984) (superceded). Under the new interference rules (37 C.F.R. § 1.601 (2004) *et seq.*) "an applicant may initiate an interference with a patent by proposing a count, presenting a claim corresponding to the proposed count, explaining why each such claim corresponds to the proposed count and applying the terms of the claim to the disclosure of the application." 3–10 Chisum on Patents § 10.09(2)(c)(iv) (quoting *Grose v. Plank*, 15 U.S.P.Q.2d 1338, 1342 (Bd.Pat. App. & Interf.1990)). *See also* 37 C.F.R. § 1.601.7 (2004); MPEP § 2307 Applicant Requests Interference With a Patent, at 2300–13, col.2.

■ "As with a count in the administrative interference process before the PTO, the description of interfering subject matter must be broad enough to encompass the common subject matter of the claims in both patents." *Slip Track*, 304 F.3d at 1265. "[I]nterfering patents are patents that claim the same subject matter, and it is thus correct, and necessary, to compare claims, not disclosures, when

comparing issued patents under section 291." *Id.* (internal citations omitted).

Once the interference count is defined, the Court then identifies the claims of the interfering patents that "correspond" to the interference count. According to the regulations outlining interference proceedings in the PTO:

Any claim of an application or patent that is designated to correspond to a count is a claim involved in the interference within the meaning of 35 U.S.C. 135(a). A claim of a patent or application that is designated to correspond to a count and is identical to the count is said to correspond exactly to the count. A claim of a patent or application that is designated to correspond to a count but is not identical to the count is said to correspond substantially to the count. When a count is broader in scope than all claims which correspond to the count, the count is a phantom count.

37 C.F.R. § 1.601(f) (2004); MPEP § 2301.02 Definitions, at 2300–4, col. 2.

**1.**

In the present case, Plaintiff JJK submitted a proposed Interference Count as follows:

1. An apparatus comprising:
a housing enclosing a vibrator;
a post;
the post having one end connected to the vibrator housing;
an electric power source to power the vibrator, the vibrator comprising an electromagnetic motor; and
means for attaching the post to one's body.

(Instrument No. 114, at 16).

■ Defendant argues that Plaintiff's proposed Interference Count is erroneous, and that genuine issues of material fact exist as to the identification of interfering

subject matter. However, a district court "has no jurisdiction under § 291 unless interference is established." Thus, the determination of whether an interference in fact exists and the ancillary question of whether interfering subject matter exists is a question of jurisdiction for the Court to decide, and not the jury. *See e.g., Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981) ("Jurisdictional issues are for the court—not the jury—to decide, whether they hinge on factual or legal determinations. The unique power of district courts to make factual findings which are decisive of jurisdiction is, therefore, not disputed. This means that the district court is not limited to an inquiry into *undisputed* facts.") (emphasis added).

Defendant further argues that the Plaintiff's "morphing" of the patent claims in order to create the proposed interference count was flawed and suspect, because the Manual of Patent Examining and Procedure does not mention "morphing" in its chapter on interference procedures conducted by the PTO. (Instrument No. 134, at 7). Defendant specifically refers to the section of Plaintiff's Motion, in which Plaintiff explains how to define an interference count, stating:

> the process of defining the interference count can be described as taking the interfering claims in the patents in dispute, and morphing them together to form an interference count that looks like a patent claim. The interference count will function like a patent claim for the purpose of determining the question of priority of invention.... When morphing the interfering claims together to form the interference count, one

must make sure to remove any claim limitations that are not found in both of the interfering claims.

(Instrument No. 114, at 8).

■ Under the PTO regulations, however, a party need not provide an explanation of how they derived a proposed interference count. "Rather, under § 1.607, an applicant may initiate an interference with a patent by proposing a count, presenting a claim corresponding to the proposed count, explaining why each such claim corresponds to the proposed count and applying the terms of the claim to the disclosure of the application." *Grose v. Plank,* 15 U.S.P.Q.2d 1338, 1342 (Bd.Pat.App. & Interf.1990); 37 C.F.R. § 1.607 (2004). Furthermore, "the description of interfering subject matter [*i.e.,* the interference count] must be broad enough to encompass the common subject matter of the claims in both patents...." *Slip Track,* 304 F.3d at 1265. Thus, some alteration or "morphing" of patent claims may be necessary in order to create a proposed interference count broad enough to encompass the common subject matter of the claims. Accordingly, the Court accepts Plaintiff JJK's explanation of how they derived a proposed interference count in this case.[3]

■ Under 37 C.F.R. § 1.607(a)(3) & (4), a person seeking to have an interference declared must "identify[ ] at least one claim in the patent corresponding to the proposed count", and "explain[ ] why each such claim corresponds to the proposed count." 37 C.F.R. § 1.607(a)(3) & (4) (2004). Accordingly, Plaintiff JJK explains that Claim 1 of Defendant Klein's

---

3. A review of the applicable interference rules and Manual of Patent Examining Procedure does not provide much guidance on how to define an interference count. Although the PTO apparently believes that defining an interference count is a matter of common sense, it is not clear what process a prospective Plaintiff should use in deriving a proposed interference count, nor is it clear what process a court should use to consider the validity of a proposed interference count.

'649 patent corresponds to the Interference Count as follows:

The "housing encasing said electric vibration generator" of Claim 1 of Klein's '649 patent corresponds to the "housing enclosing a vibrator" in the Interference Count.

The "post" of Claim 1 of Klein's '649 patent corresponds to the "post" in the Interference Count.

The "post having one end connected to the housing of the vibrator" of Claim 1 of Klein's '649 patent corresponds to the "post having one end connected to the vibrator housing" in the Interference Count.

The "battery" of Claim 1 of Klein's '649 patent corresponds to the "electric power source to power the vibrator" in the Interference Count.

The "vibrator device comprising a battery-powered electric vibration generator" of Claim 1 of Klein's '649 patent corresponds to the "vibrator comprising an electromagnetic motor" in the Interference Count.

The "means for retaining the post on such pierced portion of the body" of Claim 1 of Klein's '649 patent corresponds to the "means for attaching the post to one's body" in the Interference Count.

(Instrument No. 114, Exh 5).

Plaintiff further explains that Claim 2 of JJK's '815 patent corresponds to the Interference Count as follows:

The "housing body enclosing a vibrator" of Claim 2 of JJK's '815 patent corresponds to the "housing enclosing a vibrator" in the Interference Count.

The "post" of Claim 2 of JJK's '815 patent corresponds to the "post" in the Interference Count.

The "housing body connected to the second end of the post" and the "housing body enclosing a vibrator" of Claim 2 of JJK's '815 patent corresponds to the

"post having one end connected to the vibrator housing" in the Interference Count.

The "electric power source" of Claim 2 of JJK's '815 patent corresponds to the "electric power source to power the vibrator" in the Interference Count.

The "vibrator [being] an electromagnetic motor" of Claim 2 of JJK's '815 patent corresponds to the "vibrator comprising an electromagnetic motor" in the Interference Count.

The "retainer connected to the first end of the post" of Claim 2 of JJK's '815 patent corresponds to the "means of attaching the pose to one's body" in the Interference Count.

(Instrument No. 114, Exh 6). The Court finds merit in Plaintiff's explanation and determines that the Interference Count (*i.e.*, description of interfering subject matter) is "broad enough to encompass the common subject matter of the claims in both patents . . . ." *Slip Track*, 304 F.3d at 1265. As such, the Court adopts Plaintiff's proposed Interference Count for the purpose of determining whether an interference-in-fact exists between Claim 1 of Klein's '649 patent and Claim 2 of JJK's '815 patent.

### 2.

■ According to the regulations outlining interference proceedings in the PTO, "an interference-in-fact exists when at least one claim of a party that is designated to correspond to a count and at least one claim of an opponent that is designated to correspond to the count define the same patentable invention." 37 C.F.R. § 1.601(j) (2004). As explained, *supra*, the Court determines that Claim 1 of Klein's '649 patent and Claim 2 of JJK's '815 patent both correspond to the Interference Count. The test for determining the "same patentable invention" is referred to

as the "two-way test". *Eli Lilly*, 334 F.3d at 1268; 37 C.F.R. § 1.601(n) (2004). In order for an interference-in-fact to exist, invention A must anticipate or make obvious invention B, and invention B must anticipate or make obvious invention A, "thereby meeting both prongs of the 'two-way' test." *Id.*

Under the two-way test, the Court finds that Claim 1 of Klein's '649 patent anticipates or renders obvious each of the limitations of Claim 2 of JJK's '815 patent as follows:

The "post having one end" of Claim 1 of Klein's '649 patent anticipates or renders obvious the "elongated post with a first end and a second end" of Claim 2 of JJK's '815 patent.

The "means for retaining the post" of Claim 1 of Klein's '649 patent anticipates or renders obvious the "retainer connected to the first end of the post" of Claim 2 of JJK's '815 patent.

The "housing encasing [an] electric vibration generator" and the "post having one end connected to the housing of the vibrator device" of Claim 1 of Klein's '649 patent anticipates or renders obvious the "housing body connected to the second end of the post" of Claim 2 of JJK's '815 patent.

The "housing encasing [an] electric vibration generator" of Claim 1 of Klein's '649 patent anticipates or renders obvious the "the housing body enclosing a vibrator" of Claim 2 of JJK's '815 patent.

The "battery-powered electric vibration generator" of Claim 1 of Klein's '649 patent anticipates or renders obvious the "vibrator [being] an electromagnetic motor with an eccentric rotor" of Claim 2 of JJK's '815 patent.

The "battery housing containing a battery" of Claim 1 of Klein's '649 patent anticipates or renders obvious the "re-

tainer enclos[ing] an electric power source."

(Instrument No. 114, Exh 4 at 2).

The Court further finds that Claim 2 of JJK's '815 patent anticipates or renders obvious each of the limitations of Claim 1 of Klein's '649 patent as follows:

The "vibrator [being] an electromagnetic motor" of Claim 2 of JJK's '815 patent anticipates or renders obvious the "vibrator device comprising a battery-powered electric vibration generator" of Claim 1 of Klein's '649 patent.

The "housing body enclosing a vibrator" of Claim 2 of JJK's '815 patent anticipates or renders obvious the "moisture resistant housing encasing said electric vibration generator" of Claim 1 of Klein's '649 patent.

The "elongated post" of Claim 2 of JJK's '815 patent anticipates or renders obvious the "post of diameter suitable to be assembled through a pierced portion of the human body" of Claim 1 of Klein's '649 patent.

The "housing body enclosing a vibrator" and the "housing body connected to the second end of the post" of Claim 2 of JJK's '815 patent anticipates or renders obvious the "post having one end connected to the housing of the vibrator device" of Claim 1 of Klein's '649 patent.

The "retainer enclos[ing] an electric power source" of Claim 2 of JJK's '815 patent anticipates or renders obvious the "battery housing containing a battery" of Claim 1 of Klein's '649 patent.

The "retainer enclos[ing] an electric power source" and the "retainer connected to the first end of the post" of Claim 2 of JJK's '815 patent anticipates or renders obvious the "battery housing being connected to the post" of Claim 1 of Klein's '649 patent.

The "retainer enclos[ing] an electric power source" of Claim 2 of JJK's '815

patent anticipates or renders obvious the "means providing electrical connection from the battery to the electric vibration generator so as to provide electrical power for the electric vibration generator" of Claim 1 of Klein's '649 patent.

The "retainer connected to the first end of the post" of Claim 2 of JJK's '815 patent anticipates or renders obvious the "means for retaining the post on such pierced portion of the body" of Claim 1 of Klein's '649 patent.

(Instrument No. 114, Exh 4 at 3).

Defendant argues that Plaintiff failed to analyze Defendant's "means-plus-claim" ("means for retaining the post") by reference to other parts of Defendants' patent. (Instrument No. 134, at 5). The means-plus-function doctrine provides that "an element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital or structure, material, or acts in support thereof." 35 U.S.C. § 112, para. 6; *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1309 (Fed. Cir.2001). "Claim drafters conventionally use the preface 'means for' (or 'step for') when they intend to invoke section 112(6) ..." *Greenberg v. Ethicon Endo–Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed.Cir.1996).

▮ Here, the limitation in question is "means for retaining the post on such pierced portion of the body." '649 patent, col. 7, l. 9–10 (Claim 1). "Because this limitation is expressed in 'means plus function' language and because it does not recite definite structure in support of its function, it is subject to the requirements of 35 U.S.C. § 112, para. 6 (1994)." *Medtronic*, 248 F.3d at 1311 (quoting *Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed.Cir.1997)). "The first step in construing such a limitation is a determination of the function of the means-plus-function limitation. The next step is to

determine the corresponding structure described in the specification and equivalents thereof." *Id.* (internal citations omitted). "Structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* (quoting *Braun*, 124 F.3d at 1424).

Here, the claimed function is "to retain the claimed post on a pierced portion of the body." The corresponding structure described in the specification is performed by "retainers mounted at either end" of the post. (Instrument No. 114, Ex. 2). Drawing figures 1 and 2, and the corresponding text in the '649 patent disclose these "retainers" as a "vibrator housing" (identified with reference number 11) and a "battery holder" (identified with reference number 12), which are mounted at either end of the "post" and "act as retainers." (*See Id.* at Figs. 1 & 2, and col. 4, l. 24–25) ("Vibrator housing **11** and battery holder **12,** mounted at either end of post **18,** act as retainers."). Similarly, with reference to Defendants' dependent patent claim 2, Defendant claims, "said means for retaining the post comprise[es] the opposed location of the vibrator housing and the battery at opposite ends of the post." (*See Id.* Claim 2, col. 8, l. 6–8).

Upon review of the applicable claims and specifications, the Court determines that the "means for retaining the post on a pierced portion of the body" of Claim 1 of Klein's '649 patent, and "said means for retaining the post comprise the opposed location of the vibrator housing and the battery at opposite ends of the post" of Claim 2 of Klein's '649 patent, anticipates or renders obvious "a housing body connected to the second end of the post" and "the retainer encloses an electrical power source" of Claim 2 of JJK's '815 patent. The Court further determines that "a

housing body connected to the second end of the post" and "the retainer encloses an electrical power source" of Claim 2 of JJK's '815 patent anticipates or renders obvious "means for retaining the post on a pierced portion of the body" of Claim 1 of Klein's '649 patent, and "said means for retaining the post comprise the opposed location of the vibrator housing and the battery at opposite ends of the post" of Claim 2 of Klein's '649 patent. Thus, the Court finds that an interference-in-fact exists between Claim 1 of Klein's '649 patent and Claim 2 of JJK's '815 patent.

### 3.

■ "When an interference is declared between a patent and an application, the PTO rules require that '[a]ll claims in the application and patent which define the same patentable invention as a count shall be designated to correspond to the count.'" *In re Van Geuns,* 988 F.2d 1181, 1185 (Fed.Cir.1993) (quoting 37 C.F.R. § 1.606). A party to an interference action may contest the patentability of a claim under the "two-way test," *supra,* by reference to 35 U.S.C. § 102 or 35 U.S.C. § 103. *Eli Lilly,* 334 F.3d at 1265. Here, the parties do not contest the patentability of claims under 35 U.S.C. § 102. Under 35 U.S.C. § 103:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title [35 U.S.C. § 102], if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a) (2004). "However, where the party urging patentability does not separately address the patentability of each claim corresponding to a count, the Board has reason to treat all claims together." *Rowe v. Dror,* 112 F.3d 473, 477–78 (Fed.Cir.1997). "In such cases, all claims corresponding to the count stand or fall together." *Id.* (citing *In re King,* 801 F.2d 1324, 1325 (Fed.Cir.1986)) (dependent claims stand or fall with independent claims unless argued separately).

■ Plaintiff asserts that Claim 2 of JJK's '815 Patent corresponds to the Interference Count as shown above. As for the remaining Claims 1, 3, 4, 5, 8, 9, 12, 13 and 16 of JJK's '815 Patent, JJK does not contend that any of the claims is separately patentable over the Interference Count. Therefore, these claims shall be designated as corresponding to the Interference Count and shall stand or fall together. *See Rowe,* 112 F.3d at 478. Plaintiff further asserts that Claim 1 of Klein's '649 patent corresponds to the Interference Count as shown above. With regard to the remaining Claims 2, 3 and 4 of Klein's '649 Patent, Plaintiff asserts that these claims "correspond[ ] to the Interference Count because, considering the Interference Count as prior art, [the additional limitations listed in each claim] would not render the claim patentable over the Interference Count under 35 U.S.C. § 103." Plaintiff further argues that "[c]onsidering the Interference Count as prior art, it would have been obvious for one of ordinary skill in the art" to construct the additional limitations in these claims. (Instrument No. 114, Exh 5 at 3–4). The Court finds merit in Plaintiff's assertion of obviousness under 35 U.S.C. § 103 and designates Claims 2, 3 and 4 of Klein's '649 patent as corresponding to the Interference Count.

■ Defendant asserts that "in identifying the interfering subject matter, Plaintiff states that Defendants' patent claims 1–4 'correspond substantially' to Plaintiff's patent claims 1–5, 8, 9, 12, 13 and 16," and that "[t]his statement alone is a general

issue of material fact precluding summary judgment." (Instrument No. 134, at 3). Defendant further argues that "Defendants and Plaintiff use different words in the claims identified to allegedly contain interfering subject matter." In support of their argument, Defendants assert that under the doctrine of claim differentiation, "[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims." (Instrument No. 134, at 4) (quoting *Toro Co. v. White Consol. Industries, Inc.,* 199 F.3d 1295, 1302 (Fed.Cir.1999)). However, in an interference proceeding, the claims of the patents need not be identical. Rather, "[i]n order to provoke an interference in district court under § 291, the interfering patents [need only] have the same *or substantially the same* subject matter as that required by the PTO pursuant to 35 U.S.C. § 135." *Slip Track,* 304 F.3d at 1263 (emphasis added). The regulations outlining interference proceedings provide an explanation for this particular purpose, noting that "[a] claim of a patent or application that is designated to correspond to a count but is not identical to the count is said to *correspond substantially* to the count." 37 C.F.R. § 1.601(f) (2004) (emphasis added). Thus, Plaintiff's assertion that Defendants' patent claims "correspond substantially" to Plaintiff's patent claims, in and of itself, does not create a genuine issue of material fact.

**B.**

▮ Once the Court has completed its "interference-in-fact" analysis through application of the "two-way test," and determined that the two patents at issue do interfere with each other, the Court then determines the final question of "priority of invention." When two parties are both asserting that they were the first inventor of a particular device, "priority of invention 'goes to the first party to reduce an invention to practice unless the other party

can show that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice.'" *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1577 (Fed.Cir.1996) (quoting *Price v. Symsek,* 988 F.2d 1187, 1190 (Fed.Cir.1993)); *see also* 35 U.S.C. § 102(g) (2000). Priority and its issues of conception and reduction to practice are questions of law predicated on subsidiary factual findings. *Cooper v. Goldfarb,* 154 F.3d 1321, 1327 (Fed.Cir.1998).

**1.**

▮ Junior applicants in an administrative proceeding must establish prior invention by a preponderance of the evidence and the burden is the same in district court. *Slip Track,* 304 F.3d at 1262 (citing *Environ Prods., Inc. v. Furon Co.,* 215 F.3d 1261, 1265 (Fed.Cir.2000)). "A *senior party* is the party with the earliest effective filing date as to all counts or, if there is no party with the earliest effective filing date as to all counts, the party with the earliest filing date. A *junior party* is any other party." MPEP § 2301.02(m) Definitions, at 2300–5, col. 1 Defendant Klein filed his application that issued as the '649 patent on April 5, 2000. (Instrument No. 114, Exh 2). Plaintiff JJK filed its application that issued as the '815 patent on May 16, 2000 (Instrument No. 114, Exh 1). Because Klein's filing date is one month prior to JJK's filing date, Plaintiff JJK has the burden of establishing prior invention by a preponderance of the evidence for its interfering patents claim. (Instrument No. 114, at 15).

▮ In order to establish prior conception in an interference proceeding, the junior party must do more than show he or she imagined or desired the limitations defining the subject matter of the count. *Rexam Indus. Corp. v. Eastman Kodak*

*Co.,* 30 Fed.Appx. 983, 985 (Fed.Cir.2002). "Conception is the formulation of a definite and permanent idea of the complete and operative invention as it is hereafter to be applied in practice. Conception must include every feature or limitation of the claimed invention." *Slip Track,* 304 F.3d at 1262–63. "Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation. Because it is a mental act, courts require corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention." *Rexam,* 30 Fed.Appx. at 986 (quoting *Burroughs Wellcome Co. v. Barr Labs., Inc.,* 40 F.3d 1223, 1228 (Fed. Cir.1994)). "Thus, although reduction to practice is not an element of conception, a junior party claiming prior conception cannot meet its burden of proof merely by showing that the subject matter of the count was desired or spoken of by its inventors." *Id.*

█ As evidence of prior conception, Plaintiff's intend to introduce the oral testimony of co-inventors Wilkinson and Klearman. As evidence of corroboration, Plaintiff JJK has submitted a November 4, 1990 letter from Wilkinson to Shockley, in which Wilkinson describes his idea for an oral vibrator. In the letter, Wilkinson suggests that "you could package a [vibrator motor] in a small bullet shaped housing and screw a small battery pack to the end. Hearing aids and wristwatches run on tiny batteries that have the same voltage." (Instrument No. 114, Exh 8). Wilkinson further suggests that "[y]ou could hold in [sic, 'it'] on your tongue with a rubber band and voilá—super lover." (*Id.*). Plaintiff argues that Wilkinson's November 4, 1990 letter corresponds to the Interference Count as follows:

The "small bullet shaped housing" that "you could package one of these motors in" of Wilkinson's November 4, 1990 letter corresponds to the "housing enclosing a vibrator" in the Interference Count.

The "end" portion of the "small bullet shaped housing," to which the "small batter pack" is screwed, of Wilkinson's November 4, 1990 letter corresponds to the "post" in the Interference Count.

The integral "end" portion of the small bullet shaped housing of Wilkinson's November 4, 1990 letter corresponds to the "post having one end connected to the vibrator housing" in the Interference Count.

The "tiny batteries" that "hearing aids and wristwatches run on" of Wilkinson's November 4, 1990 letter corresponds to the "electric power source to power the vibrator" in the Interference Count.

The "vibrator motors in pagers" of Wilkinson's November 4, 1990 letter corresponds to the "vibrator comprising an electromagnetic motor" in the Interference Count.

The "rubber band" with which "you could hold in [sic, 'it'] on your tongue" of Wilkinson's November 4, 1990 letter corresponds to the "means for attaching the post to one's body" in the Interference Count.

(Instrument No. 114, Exh 7 at 2).

Defendant questions the authenticity of the November 4, 1990 letter. Defendant asserts that Plaintiff's ink expert, Erich Speckin ("Speckin"), was not able to confirm that the letter dated November 4, 1990, was actually written in 1990. In support of this argument, Defendant submits a letter from Speckin (created sometime after the commencement of this action in 2002), in which Speckin states that "[b]ased on the testing that was conducted, no indication exists that the document [*i.e.,*

1990 letter] was written within the last three years." (Instrument No. 134, Exh 1). Although this statement does not conclusively show that the letter was written in 1990, contrary to Defendant's assertion, Speckin further concluded that "[his] analysis of the document and the results obtained are consistent with the November 4, 1990 date shown on the document." (Instrument No. 134, Exh 1). Thus, Speckin's letter actually supports, rather than questions, the authenticity of the November 4, 1990 letter.

 Defendant further argues that the 1990 letter was "concocted by three interested parties, namely Wilkinson, Shockley, and Rogers, each of whom own a direct and indirect equity interest in Plaintiff JJK Industries, L.P." As such, Defendant argues that the 1990 letter is insufficient corroboration evidence of prior conception. The Court finds that regardless of whether the 1990 letter is authentic, it is not in and of itself sufficient to establish priority of invention, which requires *both* conception and reasonable diligence in later reducing the invention to practice. *See Mahurkar*, 79 F.3d at 1577. In the present case, Plaintiffs have presented no evidence of any efforts to reduce the invention to practice in the entire 8.5 years between the November 8, 1990 letter, where Wilkinson allegedly conceived of the invention and, February 26, 1999, when Wilkinson allegedly presented a sketch of a "second working prototype" of the invention. The Court finds that the 1990 letter shall be disregarded as evidence of priority of invention because Plaintiffs have failed to show that they exercised reasonable diligence, from that time, in later reducing the invention to practice.

The only other evidence that Plaintiff offers in support of its argument of prior conception is in dispute. Plaintiff JJK has submitted a February 26, 1999 letter from Wilkinson to Shockley, in which Wilkinson illustrates and describes to Shockley the conceived design of the invention. The February 26, 1999 letter states, "[t]he unit the jeweler made worked great. It is still a little to 'arts and crafts' to take the next step and start manufacturing. Here's my original conception a more manufacturable layout." The 1999 letter provides a schematic drawing of Wilkinson's conception, labeling the respective parts—"MOTOR—MOTOR HOUSING—POST—INSULATED WIRE—MATCHING THREADS—BATTERY HOUSING—MYLAR WASHER—BATTERY—PRESS FIT CAP." Wilkinson's 1999 letter finally notes, "[e]ither Brown or Gate could easily make this. Who ever is most available." (Instrument No. 114, Exh 10).

Jeffrey D. Klearman ("Klearman"), a co-inventor of JJK's '815 patent, asserts in a declaration that the "unit the jeweler made" represents the first prototype of the invention and that the February 26, 1999 letter illustrated the design for a second working prototype of the invention. (Instrument No. 114, Exh 14). Plaintiff asserts that the second working prototype was built for its intended purpose, according to Wilkinson's February, 26, 1999 letter, and delivered to Shockley on March, 8, 1999. (Instrument No. 10, 11 & 14). Plaintiff has also provided a photocopy of the second working prototype (a tangible item), the original of which is in the possession of Plaintiff JJK's counsel. (Instrument No. 11). Accordingly, Plaintiff argues that the second working prototype illustrated in the drawing dated February 26, 1999, and built on March 8, 1999, corresponds to the Interference Count as follows:

The "MOTOR HOUSING" enclosing a "MOTOR" in JJK's second working prototype corresponds to the "housing enclosing a vibrator" in the Interference Count.

The "POST" in JJK's second working prototype corresponds to the "post" in the Interference Count.

The "POST" with an end connected to the "MOTOR HOUSING" in JJK's second working prototype corresponds to "the post having one end connected to the vibrator housing" in the Interference Count.

The "BATTERY" in JJK's second working prototype corresponds to the "electric power source to power the vibrator" in the Interference Count.

The electromagnetic "MOTOR" in JJK's second working prototype corresponds to the "vibrator comprising an electromagnetic motor" in the Interference Count.

The "BATTERY HOUSING" attached to the "POST" in JJK's second working prototype corresponds to the "vibrator comprising an electromagnetic motor" in the Interference Count.

(Instrument No. 114, Exh 7 at 3).

Interestingly, however, Plaintiff's February 26, 1999 letter and alleged March 8, 1999 reduction to practice of a "second working prototype" do not coincide with testimony and evidence presented at a preliminary injunction hearing held before this Court on January 16, 2003. At the preliminary injunction hearing, Plaintiff introduced into evidence a document that Plaintiff's witness, Wilkinson, identified as a sketch used for making the "first prototype" of the invention. (Instrument No. 161, Exh 12). Plaintiff's witness, Wilkinson, identified the sketch of the "first prototype" as "Exhibit 44." (Instrument No. 161, Exh 11). In the Exhibit List presented by Plaintiff at this Court's request, Plaintiff identifies "Exhibit 44," *i.e.* the "first prototype" as being dated May 3, 1999.[4] (Instrument No. 161, Exh 12).

Thus, Plaintiff's testimonial and documentary evidence identifies one date, May 3, 1999, as a sketch used to create a "first prototype," and identifies another date, February 26, 1999, as a sketch used to create a "second working prototype" in the present Motion for Summary Judgment. These dates do not correspond.

In Plaintiff's Motion for Summary Judgment, Plaintiff concedes that "[t]he earliest date for which Klein has any documentary evidence to establish his conception of the invention is April 11, 1999." (Instrument No. 114, at 24). Defendant Klein's conception of the invention is established through drawings and entries in Defendant Klein's Notebook No.1, dated April 11, 1999. (Instrument No. 114, Exh 23). Plaintiff does not contest the authenticity or validity of Defendant Klein's Notebook. Plaintiff conveniently concedes Defendant Klein's April 11, 1999 conception when presenting evidence in its Motion of a February 26, 1999 conception letter and March 8, 1999 creation of a "second working prototype." However, Plaintiff also conveniently forgot to mention that it had previously presented testimonial evidence, under oath, that one of its inventors had created a sketch of a "first prototype" of the invention, which was dated May 3, 1999. Plaintiff's own testimonial and documentary evidence that first asserts a May 3, 1999 date for a "first prototype," and then asserts a March 8, 1999 date for a "second working prototype," in and of itself creates a genuine issue of material fact as to when Plaintiff conceived of the invention. Thus, the Court finds that Plaintiff has failed to establish prior conception by a preponderance of the evidence.

### 2.

The Court determines that the dubious nature of Plaintiff's proffered evidence of

---

**4.** Because the document identified as "Exhibit 44" was cut off at the bottom and the text could not be viewed in its entirety, this Court admitted the document "subject to plaintiff's production of [the] complete document".

prior conception casts doubt on Plaintiff's proposed evidence of prior reduction to practice. Because material issues of fact exist as to the date of Plaintiff's alleged conception and creation of a "second working prototype," the Court does not address Plaintiff's argument of prior reduction to practice. Accordingly, Plaintiff's Motion for Partial Summary Judgment on its Count III Interfering Patents Claim Under 35 U.S.C. § 291 (Instrument No. 114) is DENIED.

### IV.

Plaintiff JJK Industries, L.P.'s Motion for Partial Summary Judgment on its Count III Interfering Patents Claim Under 35 U.S.C. § 291 (**Instrument No. 114**) is **DENIED.**

The Clerk shall enter this Order and provide a copy to all parties.